FILED
CLERK, U.S. DISTRICT COURT

05/19/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DM _____ DEPUTY

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                          April 2021 Grand Jury

11  UNITED STATES OF AMERICA,          CR 20-239(A)-TJH

12            Plaintiff,               F I R S T
                                       S U P E R S E D I N G
13            v.                       I N D I C T M E N T

14  CARLOS ALBERTO ZEA LONDONO,        [18 U.S.C. § 1349: Conspiracy to
    EUDELIA LOPEZ MARTINEZ,            Commit Honest Services Mail Fraud;
15  ROGELIO ZAZUETA, and              18 U.S.C. § 1028(a)(1): Production
    ARESTAKES KHACHIKYAN,              of Identification Documents
16    aka "Aries,"                     Without Lawful Authority; 18
                                       U.S.C. §§ 981, 982 and 1028 and 28
17            Defendants.              U.S.C. § 2461(c): Criminal
                                       Forfeiture]

18

19       The Grand Jury charges:

20                              COUNT ONE

21                         [18 U.S.C. § 1349]

22              [DEFENDANTS LONDONO AND LOPEZ MARTINEZ]

23  A.   THE OBJECT OF THE CONSPIRACY

24       1.   Beginning on an unknown date and continuing to on or about

25  January 25, 2017, in Los Angeles County, within the Central District

26  of California, and elsewhere, defendants CARLOS ALBERTO ZEA LONDONO

27  and EUDELIA LOPEZ MARTINEZ conspired with Co-Conspirators Noelia

28  Rivas ("Rivas"), Amanda Rodriguez ("Rodriguez"), and Huel Kennedy

("Kennedy"), and others known and unknown to the Grand Jury, to, knowingly and with intent to defraud, devise, participate in, and execute a scheme to defraud the California DMV and the citizens of the State of California of their right to the honest services of their public officials by means of bribery, materially false and fraudulent pretenses and representations, and the concealment of material information, in violation of Title 18, United States Code, Sections 1341 and 1346.

B.   THE MANNER AND MEANS OF THE CONSPIRACY

2.   The object of the conspiracy was carried out, and intended to be carried out, in substance, as follows:

a.   Brokers, including defendants LONDONO and LOPEZ MARTINEZ, would identify and solicit people who wanted to obtain a driver's license issued by the California DMV, but who were unable to pass the necessary tests to legitimately obtain that driver's license.

b.   Brokers, including defendants LONDONO and LOPEZ MARTINEZ, would solicit driver's license applicants who needed to pass: (1) the written test for an instructional permit, a necessary first step to obtain a California driver's license; (2) the driving test, a next step to obtaining a California driver's license; or (3) both.

c.   Brokers, including defendants LONDONO and LOPEZ MARTINEZ, would negotiate the price the driver's license applicants would pay in cash in exchange for fraudulently receiving passing scores on the written test, driving test, or both, in order to obtain a California driver's license from the California DMV that they were not otherwise eligible to receive.

1        d.    Brokers, including defendants LONDONO and LOPEZ

2   MARTINEZ, would instruct the driver's license applicants to go to a

3   DMV office.

4        e.    Brokers, including defendants LONDONO and LOPEZ

5   MARTINEZ, would directly or indirectly contact a DMV employee, Co-

6   Conspirator Atanacio "A.T." Villegas ("Villegas"), and agree to pay

7   Villegas a cash bribe in exchange for obtaining a validly issued

8   California driver's license without the applicant taking or passing

9   some or all of the necessary tests to legitimately obtain that

10  driver's license.

11       f.    Brokers, including defendants LONDONO and LOPEZ

12  MARTINEZ, would contact Villegas and provide the personal identifying

13  information for the driver's license applicant.

14       g.    Villegas, in turn, would solicit the services of, and

15  arrange for the payment of a portion of the cash bribes received from

16  the brokers to, different California DMV employees, including Co-

17  Conspirators Rivas, Rodriguez, and Kennedy, who would make fraudulent

18  entries in the California DMV computer database to indicate that an

19  applicant had passed the required tests, without the applicant

20  actually taking or passing those tests, and would then unlawfully

21  issue an instructional permit and/or driver's license to the

22  applicant based on the fraudulent entries.

23       h.    Thereafter, Villegas would pay a portion of the cash

24  bribes he had received, or expected to receive, from the brokers,

25  including defendants LONDONO and LOPEZ MARTINEZ, to the other

26  California DMV employees, including Co-Conspirators Rivas, Rodriguez,

27  and Kennedy, in exchange for making the fraudulent entries.

28

                                    3

1          i.   As a result of the fraudulent entries indicating that

2    an applicant had passed the required tests, the California DMV would

3    ultimately prepare and mail a California driver's license to the

4    applicant that the applicant was not lawfully entitled to receive.

5    C.   OVERT ACTS

6          3.   On or about the following dates, in furtherance of the

7    conspiracy, and to accomplish its object, defendants LONDONO and

8    LOPEZ MARTINEZ, Co-Conspirators Rivas, Rodriguez, and Kennedy, and

9    others known and unknown to the Grand Jury, committed and willfully

10   caused others to commit the following overt acts, among others, in

11   the Central District of California and elsewhere:

12   CONFIDENTIAL INFORMANT 1

13        Overt Act No. 1:   On or before April 20, 2016, defendants

14   LOPEZ MARTINEZ and LONDONO told an individual who, unbeknownst to

15   them, was working with law enforcement ("CI 1") that, in exchange for

16   cash, they could obtain a California driver's license for CI 1.

17        Overt Act No. 2:   On or about April 21, 2016, Co-Conspirator

18   Villegas instructed Co-Conspirators Rivas and Rodriguez to enter

19   passing scores for an instructional permit for CI 1.

20        Overt Act No. 3:   On or about April 21, 2016, defendant LOPEZ

21   MARTINEZ drove CI 1 to the Torrance DMV office for the purpose of

22   obtaining a fraudulent instructional permit.

23        Overt Act No. 4:   On or about April 21, 2016, defendant LOPEZ

24   MARTINEZ directed CI 1 to go to a particular DMV service window that

25   was occupied by Rivas.

26        Overt Act No. 5:   On or about April 21, 2016, after CI 1 came

27   to his DMV service window, Co-Conspirator Rivas accessed the

28   California DMV applicant record for CI 1.

<u>Overt Act No. 6:</u>   On or about April 21, 2016, Co-Conspirator Rodriguez accessed the record for CI 1, entered a passing score for CI 1 on the Class C law test in the DMV computer system, and issued an instructional permit to CI 1.

<u>Overt Act No. 7:</u>   On or about April 21, 2016, Co-Conspirator Villegas paid Co-Conspirators Rivas and Rodriguez cash.

<u>Overt Act No. 8:</u>   On or about April 21, 2016, defendant LONDONO accepted an $800 cash payment from CI 1 for obtaining the instructional permit.

<u>DMV APPLICANT A.P.M.</u>

<u>Overt Act No. 9:</u>   On or before April 20, 2016, defendants LOPEZ MARTINEZ and LONDONO told A.P.M. that, in exchange for cash, they could obtain a California driver's license for A.P.M.

<u>Overt Act No. 10:</u>   On or before April 21, 2016, Co-Conspirator Villegas told Co-Conspirators Rivas and Rodriguez to enter passing scores for an instructional permit for A.P.M.

<u>Overt Act No. 11:</u>   On or about April 21, 2016, defendant LOPEZ MARTINEZ drove A.P.M. to the Torrance DMV office to obtain a fraudulent instructional permit.

<u>Overt Act No. 12:</u>   On or about April 21, 2016, defendant LOPEZ MARTINEZ directed A.P.M. to go to a particular DMV service window that was occupied by Rivas.

<u>Overt Act No. 13:</u>   On or about April 21, 2016, Co-Conspirator Rivas accessed the California DMV applicant record for A.P.M.

<u>Overt Act No. 14:</u>   On or about April 21, 2016, Co-Conspirator Rodriguez accessed the applicant record for A.P.M., entered a passing score for A.P.M. on the Class C law test in the DMV database, and issued an instructional permit to A.P.M.

Overt Act No. 15:   On or about April 21, 2016, Villegas paid Co-Conspirators Rivas and Rodriguez cash.

Overt Act No. 16:   On or about April 21, 2016, defendant LONDONO accepted an $800 cash payment from A.P.M. for obtaining the instructional permit.

UNDERCOVER OFFICER 1

Overt Act No. 17:   On or about May 5, 2016, Co-Conspirator Villegas told Co-Conspirator Rivas to enter passing scores for tests required for an instructional permit for a person who, unbeknownst to him, was an undercover officer ("UC 1"), using the name David Carlos Cruz.

Overt Act No. 18:   On or about May 5, 2016, defendant LOPEZ MARTINEZ met with UC 1 in the parking lot of the Torrance DMV.

Overt Act No. 19:   On or about May 5, 2016, defendant LOPEZ MARTINEZ walked into the Torrance DMV with UC 1, and told UC 1 to approach the service window occupied by Co-Conspirator Rivas immediately after the prior customer left that window.

Overt Act No. 20:   On or about May 5, 2016, after UC 1 approached her window, Co-Conspirator Rivas accessed the DMV applicant record for UC 1, entered a passing score on the Class C law test for UC 1, and issued an instructional permit to UC 1.

Overt Act No. 21:   On or about May 5, 2016, defendant LOPEZ MARTINEZ accepted a cash payment of $1,000 from UC 1 in exchange for helping UC 1 obtain the instructional permit.

Overt Act No. 22:   On or about May 5, 2016, Co-Conspirator Villegas paid Co-Conspirator Rivas.

CONFIDENTIAL INFORMANT 2

Overt Act No. 23:   On or about July 21, 2016, defendant LOPEZ MARTINEZ and an individual who, unbeknownst to her, was working with law enforcement ("CI 2") met at the Torrance DMV and walked inside together.

Overt Act No. 24:   On or about July 21, 2016, defendant LOPEZ MARTINEZ instructed CI 2 to fill out the application for a hazmat endorsement, pay the fee for the hazmat endorsement, and take a photo at the camera window.

Overt Act No. 25:   On or about July 21, 2016, defendant LOPEZ MARTINEZ directed CI 2 to go to a particular DMV service window that was occupied by Kennedy.

Overt Act No. 26:   On or about July 21, 2016, after CI 2 went to his window, Co-Conspirator Kennedy accessed the DMV applicant records associated with CI 2, waived all of the tests required to legally obtain the hazmat endorsement, and issued a Class A (commercial) driver's license with a hazmat endorsement to CI 2.

Overt Act No. 27:   On or about July 21, 2016, CI 2 and defendant LOPEZ MARTINEZ went outside the Torrance DMV office and defendant LOPEZ MARTINEZ accepted the balance of the cash payment that CI 2 had agreed to pay defendant LOPEZ MARTINEZ to obtain the hazmat endorsement.

UNDERCOVER OFFICER 2

Overt Act No. 28:   On or about September 26, 2016, defendant LOPEZ MARTINEZ sent a text message to CI 2 about obtaining a driver's license for a friend, identified as Maria Camacho, who was actually a law enforcement officer acting in an undercover capacity ("UC 2").

Overt Act No. 29:   On or about September 26, 2016, defendant LOPEZ MARTINEZ told CI 2 by text that it would cost $1,400 to obtain a driver's license for UC 2.

Overt Act No. 30:   On or about October 5, 2016, defendant LOPEZ MARTINEZ told CI 2 by text that she could not obtain the driver's license for $1,000, which was the price CI 2 had asked to pay.

Overt Act No. 31:   On or about October 5, 2016, after CI 2 indicated that UC 2 had $1,200, defendant LOPEZ MARTINEZ agreed by text to obtain the driver's license for $1,200.

Overt Act No. 32:   On or before October 6, 2016, defendant LOPEZ MARTINEZ requested an advance payment of $800 from CI 2.

Overt Act No. 33:   On or about October 7, 2016, defendant LOPEZ MARTINEZ and CI 2 met at a restaurant in Long Beach, California, so that defendant LOPEZ MARTINEZ could receive that advance payment.

Overt Act No. 34:   On or about October 7, 2016, defendant LOPEZ MARTINEZ accepted $800 in cash as advance payment in exchange for helping UC 2 to obtain a fraudulent driver's license.

Overt Act No. 35:   On or before October 11, 2016, Villegas instructed Rodriguez to enter passing scores for the written test for UC 2.

Overt Act No. 36:   On or about October 11, 2016, defendant LOPEZ MARTINEZ met with CI 2 and UC 2 in the parking lot at the Torrance DMV.

Overt Act No. 37:   On or about October 11, 2016, defendant LOPEZ MARTINEZ made a phone call to find out what service window UC 2 should go to inside the Torrance DMV.

Overt Act No. 38:   On or about October 11, 2016, defendant LOPEZ MARTINEZ advised UC 2 to follow her to a particular DMV service

window where there was no customer waiting.  Defendant LOPEZ MARTINEZ appeared nervous in conveying the instructions to UC 2 and stated that what they were doing was not legal.

Overt Act No. 39:  On or about October 11, 2016, defendant LOPEZ MARTINEZ received instructions over the phone to proceed to window number 10, which was occupied by Co-Conspirator Rodriguez, which she conveyed to UC 2.

Overt Act No. 40:  On or about October 11, 2016, Co-Conspirator Rodriguez accessed the DMV applicant record for UC 2, entered a passing score for UC 2 on the Class C law test, and issued an instructional permit to UC 2.

Overt Act No. 41:  On or about October 11, 2016, Co-Conspirator Rodriguez handed UC 2 a receipt for the instructional permit, but not the printed instructional permit itself.

Overt Act No. 42:  On or about October 11, 2016, defendant LOPEZ MARTINEZ accepted a cash payment of $400 from UC 2 as the balance due for obtaining the instructional permit.

Overt Act No. 43:  On or about October 11, 2016, Co-Conspirator Villegas paid Co-Conspirator Rodriguez cash.

Overt Act No. 44:  On or about October 11, 2016, defendant LOPEZ MARTINEZ obtained a printout of the instructional permit for UC 2.

Overt Act No. 45:  On or about October 13, 2016, defendant LOPEZ MARTINEZ met with CI 2 to deliver the printout of the instructional permit for UC 2.  During that meeting, CI 2 told defendant LOPEZ MARTINEZ that she had calmed UC 2 down during the transaction by her experience, and defendant LOPEZ MARTINEZ indicated that they were still taking chances.

COUNT TWO

[18 U.S.C. §§ 1028(a)(1), 2(a), 2(b)]

[DEFENDANT ZAZUETA]

Between on or about June 26, 2015, and on or about July 22, 2015, in Los Angeles County, within the Central District of California, defendant ROGELIO ZAZUETA, knowingly and without lawful authority, willfully caused to be produced, and aided and abetted the production of, an identification document issued by and under the authority of the State of California, namely, one California Driver's License in the name of E.V.H., which was mailed to E.V.H. on or about July 22, 2015.

COUNT THREE

[18 U.S.C. §§ 1028(a)(1), 2(a), 2(b)]

[DEFENDANT KHACHIKYAN]

Between on or about May 25, 2016, and on or about July 26, 2016, in Los Angeles County, within the Central District of California, defendant ARESTAKES KHACHIKYAN, aka "Aries," knowingly and without lawful authority produced, willfully caused to be produced, and aided and abetted the production of, an identification document issued by and under the authority of the State of California, namely, one California Driver's License in the name of K.C., which was mailed to K.C. on or about July 26, 2016.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this First Superseding Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)  all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1028]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 1028, in the event of any defendant's conviction of the offenses set forth in either of Counts Two or Three of this First Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b)  Any personal property used or intended to be used to commit the offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b) and 1028(g), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has

13

1    been commingled with other property that cannot be divided without

2    difficulty.

3                                        A TRUE BILL

4

5                                        _____/ S /_____

6                                        Foreperson

7

8

9    TRACY L. WILKISON
     Acting United States Attorney

10
     Scott M. Garringer
     Deputy Chief, Criminal Division For:

11   BRANDON D. FOX

12   Assistant United States Attorney
     Chief, Criminal Division

13   MARK A. WILLIAMS

14   Assistant United States Attorney
     Chief, Environmental and Community

15   Safety Crimes Section

16   DENNIS MITCHELL
     Assistant United States Attorney

17   Deputy Chief, Environmental and
     Community Safety Crimes Section

18
     ERIK M. SILBER

19   AMANDA M. BETTINELLI
     Assistant United States Attorneys

20   Environmental and Community Safety
     Crimes Section

21

22

23

24

25

26

27

28